IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| James F. Reynolds, | : | |
| | : | Case No. C-1-03-459 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING |
| Georgia-Pacific Corp., | : | SUMMARY JUDGMENT TO |
| | : | DEFENDANT |
| Defendant. | : | |

This matter comes before the Court on Defendant Georgia-Pacific Pacific's Motion for Summary Judgment (doc. #22). For the reasons that follow, the Court **GRANTS** Georgia-Pacific's motion (doc. #22) and also sua sponte **GRANTS** summary judgment to Georgia-Pacific on Reynolds' public policy claims.

**I.     BACKGROUND**

This case arises from the termination of Plaintiff James F. Reynolds ("Reynolds")'s employment with Defendant Georgia-Pacific Corp. ("Georgia-Pacific"). Reynolds worked for Georgia-Pacific and/or its predecessor corporations as a sales representative ("sales rep") from 1976 until October of 2000, when he was promoted to District Sales Manager for the Detroit District. (Reynolds dep. at 25-26, 32.) In mid-2002, Georgia-Pacific began restructuring its sales force, in part to be able to work more efficiently and effectively with its customers. (See Shelton dep. at 50; Hawkins dep. at 19-28.) As part of the reorganization, Georgia-Pacific consolidated

1

several sales districts, including the Detroit and Indianapolis Districts. (Reynolds dep. at 89-90.)

In May of 2002, Joe Horvath, then Georgia-Pacific's Central Region Division Manager, held a conference call, in which he informed Reynolds and the other District Managers that Georgia-Pacific was going to reorganize. (Id. at 83-84.) In June of 2002, Horvath told Reynolds that the Detroit and Indianapolis Districts were going to be consolidated. (Id. at 99.) On July 10, 2002, Horvath and Gerry Hawkins interviewed Reynolds in person in Chicago for the new Detroit-Indianapolis consolidated District Manager position, and later the same day B.J. Shelton conducted a phone interview with Reynolds. (Id. at 94, 130.) Jim Schwartz, the Indianapolis District Manager, was also being considered for the position.

A few weeks later, Horvath told Reynolds that Schwartz had been chosen to be the consolidated District Manager. (Reynolds dep. at 110.) Horvath and Shelton also told Reynolds to look on the Georgia-Pacific intranet and apply for any job listed there. (Id. at 111, 135.) In late September, there was a posting on the intranet for an opening as the Houston District Manager. (Id. at 136.) Reynolds applied for that position, but Glenn Lyons, the hiring manager for Houston, decided not to interview Reynolds for that position. (Id. at 138-39.)

Georgia-Pacific terminated Reynolds' employment at the end of September of 2002. Reynolds was 57 at the time. (Id. at 6.) Reynolds filed his complaint on June 23, 2003, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623; age discrimination in violation of Ohio Revised Code ("O.R.C.") § 4112; breach of Ohio public policy against age discrimination; age discrimination in violation of Michigan Compiled Laws ("M.C.L.") § 37.2202; and breach of Michigan public policy. (See doc. #1.) On February 28, 2005, Georgia-Pacific moved for summary judgment on Reynolds' age

2

discrimination claims.

## II.     JURISDICTION AND LEGAL STANDARD

This Court has federal question jurisdiction under 28 U.S.C. §1331 over Reynolds' ADEA claim, and supplemental jurisdiction under 28 U.S.C. § 1367 over Reynolds' state law claims.  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.

## III.    ANALYSIS

Georgia-Pacific moves for summary judgment on Reynolds' age discrimination claims. Reynolds argues that two of Georgia-Pacific's employment decisions were motivated by age discrimination: 1) Georgia-Pacific's choice of Schwartz instead of Reynolds as the consolidated District Manager, and 2) Georgia-Pacific's choice of Brent Berquist for the Houston District Manager Position and denial of an interview to Reynolds for that position.  Reynolds indicts Georgia-Pacific for the mere fact that Georgia-Pacific did not assist Reynolds in finding another

3

position within the company. It is important to emphasize, however, that "an employer owes no duty to an employee to transfer him to another position when the employer reduces its workforce for economic reasons." See Ridenour v. Lawson Co., 791 F. 2d 52, 57 (6th Cir. 1986). The crucial question the Court must examine is whether Georgia-Pacific's decision not to transfer Reynolds was made impermissibly on the basis of his age.

    A.    **ADEA Claim**

In Count I, Reynolds brings a claim under the ADEA, 29 U.S.C. § 623. Reynolds has no direct evidence of age discrimination, but he maintains that he can prove his case through circumstantial evidence. In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), the Supreme Court laid out the burden shifting analysis for private claims alleging employment discrimination. To prove discrimination by circumstantial evidence, Reynolds must first establish a prima facie case. See id. at 802. "Where an employer can demonstrate that a plaintiff was terminated as part of a [reduction in force], the elements of a prima facie case are modified to require a heightened proffer of evidence." See Norbuta v. Loctite Corp., 1 Fed. Appx. 305, 312 (6th Cir. 2001). However, Georgia-Pacific conceded for the purposes of its motion for summary judgment that Reynolds could make a prima facie case. (See doc. #22 at 11.) As such, the burden of production shifts back to Georgia-Pacific to articulate a legitimate, nondiscriminatory reason for terminating Reynolds. See McDonnell Douglas, 411 U.S. at 802-03. If Georgia-Pacific meets this burden, then Reynolds must show that Georgia-Pacific's articulated reason is merely a pretext for illegal discrimination. Id. at 804. Thus, although the burden of production shifts in this analysis, the burden of persuasion remains with Reynolds at all times. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

### 1. Georgia-Pacific's Decision to Hire Schwartz Over Reynolds for the Consolidated District Manager Position

First, the Court will consider Reynolds' claim that Georgia-Pacific committed age discrimination in choosing Schwartz over him for the consolidated District Manager position. Georgia-Pacific has put forward a legitimate, nondiscriminatory reason for its employment action: 1) the company terminated Reynolds pursuant to a reorganization and reduction in force[1], and 2) the managers in charge of hiring a manager for the new consolidated district concluded that Schwartz was a better candidate. The burden thus returns to Reynolds to show that Georgia-Pacific's articulated reason is merely a pretext for illegal discrimination.

To prove that Georgia-Pacific's explanation for failing to reassign him is mere pretext, Reynolds "is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." See Manzer v. Diamond

---

[1] Although Reynolds described Georgia-Pacific's reorganization as a "restructuring and reduction in force" in his complaint, he argues in his Memorandum in Opposition to Defendant's Motion for Summary Judgment that the reorganization was not, in fact, a reduction in force. (Compare doc. #1, ¶¶ 17,24, with doc. #25 at 5.) Reynolds' argument is without merit. There is some evidence suggesting that overall, the reorganization was not intended to be a reduction in force, in the sense that reducing numbers was not Georgia-Pacific's primary goal. However, a reduction in force includes situations like this one where "business considerations cause an employer to eliminate *one or more* positions within the company." See Norbuta, 1 Fed. Appx. at 313 (emphasis added). The evidence is undisputed that Georgia-Pacific consolidated several districts, including the Detroit and Indianapolis Districts, and that some District Manager positions were eliminated as a result. (Reynolds dep. at 89-90.) While "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge...a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties." Norbuta, 1 Fed. Appx. at 313. Here, because the districts were consolidated, Schwartz assumed some of Reynolds' duties in addition to his own. As such, Georgia-Pacific's restructuring qualifies as a reduction in force under the law.

Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (citations and internal quotations omitted). Reynolds attempts to show pretext by the first two methods only.

The first method of showing pretext requires "evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are 'factually false.'" Id. (citation omitted). Georgia-Pacific has offered a legitimate reason for its decision to select Schwartz instead of Reynolds, including the undisputed facts that Schwartz had been a District Manager for four years to Reynolds' one and a half years, and that Reynolds received a substandard performance evaluation shortly before the challenged employment decisions were made.[2] Reynolds argues that Georgia-Pacific's reason is factually false because Schwartz was seventeen years younger than Reynolds, had twelve fewer years of experience in the industry, and was not performing as well as Reynolds.

First, "[t]he isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." See Hedrick v. Western Reserve Care System, 355 F.3d 444, 462 (6th Cir. 2004) (citing Chappell v. GTE Prods. Corp., 803 F.2d 261, 267 (6th Cir. 1986)). Thus, the fact that Schwartz was younger than Reynolds is not sufficient to show pretext. Second, with these allegations, Reynolds does not prove false either the facts on which Georgia-Pacific based its decision, nor the reason itself (*i.e.*, that Schwartz was a better candidate). Rather, he challenges Georgia-Pacific's subjective conclusion that Schwartz was a better candidate. Reynolds' "subjective view of [his] qualifications in relation to those of the other applicants, without more,

---

[2]Though Reynolds disagreed with his evaluation, it is undisputed that he received a 2 on a scale of 1 to 5 in his 2001 performance evaluation, which put him in the "improvement needed" category. (Reynolds dep. at 63, 68.)

cannot sustain a claim of discrimination." See Hedrick, 355 F.3d at 462.

The Sixth Circuit has repeatedly emphasized that "it is inappropriate for the judiciary to substitute its judgment for that of management," and that a court's appropriate inquiry is limited to "whether the employer gave an honest explanation of its behavior." Id.  However, a Court may consider whether an employer's decision was reasonably informed and considered "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler v. White's Fine Furniture, Inc. 317 F.3d 564, 576 (6th Cir. 2003); see also Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir.1998). The Court notes that in coming to its decision to hire Schwartz instead of Reynolds, Georgia-Pacific interviewed Reynolds and considered his performance record.  In light of these facts, this Court will not second guess Georgia-Pacific's decision.  The Court thus finds that Reynolds has offered no evidence to suggest that Georgia-Pacific's proffered reasons have no basis in fact. Reynolds has thus failed to prove pretext by the first method.

To show pretext by the second method, Reynolds must show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." See Manzer, 29 F.3d at 1084.  In the Sixth Circuit, "in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination." Id. Reynolds alleges that Horvath made two remarks that are circumstantial evidence of discrimination.[3]  Reynolds alleges that in September 2001, Horvath said to a marketing person

---

[3]As there is no other apparent evidence of discrimination, the Court presumes that Reynolds would have relied upon these two comments to make out his prima facie case.  If that were true, Reynolds would need additional evidence to establish pretext.  See Manzer, 29 F.3d at

7

that he had the oldest group of District Managers in the country, (see doc. #25, citing Reynolds dep. at 145-46), and that in early 2002, Horvath described Gary Stelow, one of Reynolds' subordinates, as an "old guy" who had "outlived his usefulness." (See id., citing Reynolds dep. at 147.)

The Sixth Circuit has laid out several rules for analyzing the relevance of age-related comments. See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 354-57 (6th Cir. 1998). The first consideration is who made the alleged statement. Id. at 354. Next, the Court must "examine the substance of the discriminatory remarks in determining their relevancy." Id. at 355. Last, the Court must consider the nexus, or "temporal connection between the statement and the challenged employment action." Id. at 357 (citing Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 133 (3d Cir. 1997)); see also Bigelow v. ANR Pipeline Co., No. 96-1642, 1997 WL 428964, at **5 (6th Cir. July 29, 1997).

Here, the person who made both of the allegedly discriminatory statements was also one of the people who made the decision to hire Schwartz instead of Reynolds as the new consolidated District Manager. The statements thus are significant and need to be further analyzed. "[A]n employer's comments referring directly to a *plaintiff's age* may support an inference of discriminatory animus. . . . Isolated and ambiguous comments," however, "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." Id. (emphasis in original). Horvath's comment did not refer directly to

---

1084. However, because Georgia-Pacific conceded without argument that Reynolds could make out a prima facie case, the Court is not certain of what arguments Reynolds would have made. For the sake of fairness, the Court will consider these alleged comments as part of Reynolds' pretext argument.

Reynolds or his age. Moreover, while Reynolds alleges that Horvath's comment about having the oldest group of managers in the country was critical, at least one other person who heard it thought the comment was a compliment about his managers' collective experience. (See Goodman dep. at 46-48.) The Court finds the comment to be neutral and ambiguous.

Horvath's other alleged comment, while more suspect, was also not about Reynolds or his age. Moreover, Horvath's second comment is similar to some – and not as inflammatory as other – comments which the Sixth Circuit has found insufficient to require a finding of pretext. See Sherman v. American Cyanamid Co., No. 98-4035, 1999 WL 701911, at **5 (6th Cir. Sept. 1, 1999); Bigelow, 1997 WL 428964, at **5. For instance, in Sherman, the plaintiff's supervisor said of another employee, "you cannot teach an old dog new tricks." See Sherman, 1999 WL 701911, at **4. And in Bigelow, the plaintiff's supervisor remarked that the company fired one employee because of a "'combination of age and wage," and that the company needed to fire its "old fart" employees. Bigelow, 1997 WL 428964, at **2. In both these cases, the Sixth Circuit held that the remarks were not sufficient to permit the conclusion that the sheer weight of the circumstantial evidence made it more likely than not that the employer's justification was pretext. See Sherman, 1999 WL 701911, at **5; Bigelow, 1997 WL 428964, at **5.

The Court comes to the same conclusion here. Not only are Horvath's allegedly discriminatory statements insufficient to make it more likely than not that Georgia-Pacific's explanation is pretextual, but also other circumstantial evidence fails to support Reynolds' argument. As Georgia-Pacific notes, the Sixth Circuit has considered the fact that a company retained other older employees in a reduction in force as evidence that the employer's employment decisions were not motivated by age discrimination. Ferrette, 105 Fed. Appx. at

9

726 (three of four employees retained were over 50, and one was over 70).[4] In this case, during the reduction in force, Horvath selected another older employee, Howard Goodman, then age 57,

---

[4]Reynolds cites Ercegovich, 154 F.3d at 356-57, for the related proposition that "evidence of discrimination against other older workers . . . may serve to support other evidence of pretext and as circumstantial evidence of discrimination against the plaintiff." (See doc. #25 at 17.) In Ercegovich, the Sixth Circuit held only that discriminatory *remarks* by management regarding other employees may, in certain circumstances, indicate a corporate culture of discrimination that supports the inference of discrimination against a plaintiff. The Ercegovich court explained how such remarks should be analyzed, a process that the Court has undertaken above regarding Horvath's alleged remarks about his District Managers in general and about Gary Stelow. Ercegovich specifically concerned such statements, and does not support this Court's consideration of the other "evidence" that Reynolds puts forth about alleged age discrimination against other older employees. Regardless, even if Ercegovich permitted this Court to consider such evidence, the Court finds, below, that the evidence is not probative of age discrimination.

For instance, Reynolds argues that a jury should be allowed to consider evidence that Georgia-Pacific's Consumer Products Sales Division "as a whole targeted older District Managers for removal." (See doc. #25 at 17.) The pattern and practice *method* of proving discrimination is not available to individual plaintiffs, so the Court may not consider such an argument. See Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004) (race discrimination context). Nevertheless, pattern and practice *evidence* may be relevant to proving an individual claim for disparate treatment. See id. The Court may thus consider the specific evidence Reynolds cites. First, Reynolds notes that Horvath removed Goodman and replaced him with a younger District Manager. As discussed above, Horvath in fact retained Goodman as a Redistribution Manager, which is evidence that is contrary to a finding of discrimination. Next, Reynolds argues that Horvath also discriminated against Gary Stelow because of his age. Reynolds notes that Stelow attested that: 1) Horvath repeatedly asked him when he was going to retire, 2) Schwartz gave him an ultimatum to quit or be fired; and 3) Stelow believed these actions were motivated by his age. (Id. at Ex. 2., Stelow Aff.) The Court notes that, under the Ercegovich analysis, such questions and comments are not discriminatory on their face, are temporally removed from the decisions at issue, and, in the case of Schwartz's alleged ultimatum, were made by someone who had no influence over the employment decisions at issue. They therefore are not circumstantial evidence of discrimination.

Reynolds also notes that the average age of the seven District Managers who were removed from their jobs in 2002 was 50.14 years. In reduction of force cases involving a brief period of time, the Sixth Circuit has considered whether a change in the average age of employees is indicative or contraindicative of discrimination. See, e.g., Almond v. ABB Industrial Systems, Inc., 56 Fed. Appx. 672, 677 (6th Cir. 2003) (collecting cases). Reynolds' statistic, however, is not probative because it is not presented in the context of comparative figures.

10

for another manager position.⁵ (Reynolds dep. at 178; Horvath dep. at 153.) Moreover, there is no temporal nexus here between the alleged comments and Reynolds' not being chosen as the consolidated District Manager; one of these statements was made almost a year before and the other approximately six months before Georgia-Pacific chose Schwartz over Reynolds for the post. See Bigelow, 1997 WL 428964, at **5 (abstract, alleged discriminatory statements made months before plaintiff's termination do not support finding of discrimination). Even taking Reynolds' allegations about Horvath's statements as true, the Court finds that Reynolds has not offered sufficient evidence from which a reasonable jury could conclude it is more likely than not that Georgia-Pacific's proffered reasons did not actually motivate Georgia-Pacific's choice of Schwartz over Reynolds and Reynolds' subsequent termination. Reynolds has thus failed to prove pretext by either of the first two Manzer methods.⁶

### 2. Georgia-Pacific's Decision Not to Hire or Consider Reynolds for the Houston District Manager Position

Next the Court will consider Reynolds' claim that Georgia-Pacific discriminated against him by failing to transfer him to an open District Manager position in Houston. Again, Georgia-Pacific conceded for the purpose of its motion for summary judgment that Reynolds could make

---

⁵Goodman was a District Manager of another district that was consolidated. He was moved to the position of Redistribution Manager, which he considered a lateral move. (Goodman dep. at 28-29.)

⁶The final way for Reynolds to establish pretext is to show that Georgia-Pacific's proffered reasons for Reynolds' termination are insufficient to motivate discharge. See Manzer, 29 F.3d at 1084. Reynolds does not appear to make this argument, but the Court will consider it briefly enough to note that the combination of Georgia-Pacific's reorganization and Reynolds' performance evaluation gave sufficient reason for his discharge and Georgia-Pacific's choice of Schwartz over him for the consolidated district manager position.

out a prima facie case of age discrimination. (See doc. #22 at 11.) The Court thus must follow the same inquiry as that above. Georgia-Pacific has put forward a legitimate, nondiscriminatory reason for its employment action: 1) the reduction in force; and 2) Georgia-Pacific's conclusion that Reynolds was not a good candidate for the position because of Reynolds' substandard performance evaluation. The burden again falls to Reynolds to prove that Georgia-Pacific's articulated reason is merely a pretext for illegal discrimination.

Again, to prove that Georgia-Pacific's explanation for failing to reassign him is mere pretext, Reynolds must show by a preponderance of the evidence either "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." Manzer, 29 F.3d at 1084 (citations and internal quotations omitted). Reynolds again attempts to show pretext only by the first two methods.

First, Reynolds argues that Lyons' decision not to select Reynolds for the Houston District Manager position had no basis in fact because Lyons was not sufficiently informed to make such a decision and because Reynolds was the more qualified candidate. Reynolds argues that Lyons was not so informed because he did not interview Reynolds, and he could not give any reason why he hired Berquist. Lyons, however, did cite an undisputed reason why he chose not to interview or select Reynolds for the position: his knowledge of "issues surrounding [Reynolds'] performance as a district manager," as exemplified by Reynolds' performance evaluation of a 2 on a scale of 5. (Lyons dep. at 99.) The Court finds that Lyons' concerns and explanation were reasonable, and as explained above, will not substitute its judgment for that of management. See Hedrick, 355 F.3d at 462. Reynolds has thus failed to show pretext by the

12

first method.

To show pretext by the second method, Reynolds must present evidence that undermines the credibility of Georgia-Pacific's explanation for the challenged employment action through circumstantial evidence of discrimination. See Manzer, 29 F.3d at 1084. Reynolds' evidence here is even more attenuated that his evidence on the discrimination claim addressed above. Reynolds has presented no evidence of discriminatory remarks that Lyons made, nor any other evidence suggesting that Lyons had an age bias or that age discrimination affected Georgia-Pacific's decision not to consider Reynolds for the Houston District Manager position. In fact, he admits that he has no additional information other than Horvath's comments to support his assumption that his age influenced the decision. (Reynolds dep. at 149-50.) Instead, Reynolds points again to Horvath's alleged discriminatory remarks as circumstantial evidence that Georgia-Pacific's proffered explanation did not actually motivate its decision. Although Lyons made the decision not to hire or interview Reynolds, Reynolds alleges that because Lyons spoke with Horvath about him, Lyons' decision was tainted by Horvath's discriminatory animus. (See doc. #25 at 18.) "[D]iscriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination." Ercegovich, 154 F.3d at 356. However, "discriminatory remarks of those who may have influenced the decision not to reassign the plaintiff to other positions in the company may be relevant when the plaintiff challenges the motive behind that decision." Id. at 355. As Horvath's remarks may have influenced Lyons' decision, Horvath's alleged remarks are relevant.

Nevertheless, the Court has already found, above, that Horvath's alleged remarks do not compel a finding of pretext under the law. And, those remarks are even further removed from

13

the decision at issue here, that is, Georgia-Pacific's decision not to interview Reynolds for the Houston District Manager position, than they were from Georgia-Pacific's decision not to hire Reynolds as the consolidated District Manager. Consequently, the Court holds that Reynolds has failed to show that a reasonable jury could conclude that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext." Reynolds has thus again failed to prove pretext by either Manzer method.

The Court concludes that, even when the evidence is taken in the light most favorable to Reynolds, Reynolds has failed to show by such evidence that a reasonable jury could conclude that either of the challenged employment decisions were more likely than not motivated by age discrimination. The Court thus **GRANTS** summary judgment to Georgia-Pacific on Reynolds' ADEA claim.

### B. State Law Claims[7]

#### 1. Statutory Claims

In Counts II and IV, Reynolds brings claims under O.R.C. §4112 and M.C.L. § 37.2102, respectively. Ohio courts apply the same standards to age discrimination claims under O.R.C. 4112 as those applicable to age discrimination claims under the ADEA. See Ferrette v. Cuyahoga Cty. Bd. of Elections, 105 Fed. Appx. 722, 725 n.2 (6th Cir. 2004); Owen v. Penton Pub, Inc., No. 91-3744, 1992 WL 92739, at **7 n.1 (6th Cir. Date 1992) (citing Plumbers v.

---

[7]The Court notes that Reynolds has brought claims under both Michigan and Ohio law, but the parties have not presented a choice-of-law analysis. The Court declines to do so either, as summary judgment should be granted on all of Reynolds' state law claims regardless of which state's law applies.

Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 421 N.E. 2d 128, 131 (Ohio 1981)). Therefore, the Court's ADEA analysis, above, also governs Reynolds' Ohio law age discrimination claim.

Under M.C.L. § 37.2202, a plaintiff has three possible approaches to stating a prima facie age discrimination case. First, he may use the McDonnell Douglas framework applied to claims under the ADEA. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir. 1990); Matras v. Amoco Oil Co., 385 N.W.2d 586, 589 (Mich. 1986) (applying McDonnell Douglas analysis to claim under Michigan law). Second, he may use an approach developed by Michigan courts, where the court examines whether age was a determinative factor in the plaintiff's discharge. Id. Third, he may show through circumstantial, statistical or direct evidence that he was discriminated against. Id. Once a plaintiff proves a prima facie case by one of these methods, however, Michigan courts apply the same analysis and evidentiary burdens to claims under M.C.L. § 37.2202 as those that federal courts apply to claims under the ADEA.[8] See Union Camp Corp., 898 F.2d at 1162 (citing Simpson v. Midland-Ross Corp. 823 F.2d 937, 940 (6th Cir. 1987)). Reynolds' age discrimination claim under Michigan law thus also stands or falls with his claim of age discrimination under the ADEA.

Thus, for the reasons stated above, summary judgment is also **GRANTED** on Reynolds' state age discrimination claims.

### 2. Public Policy Claims

In Counts II and V, Reynolds brings claims for breach of Ohio public policy and breach

---

[8] Again, Georgia-Pacific has conceded for the purposes of this motion that Reynolds can state a prima facie case of age discrimination. The Court thus need not analyze whether Reynolds has stated a prima facie case under Michigan law.

of Michigan public policy, respectively. It is clear under Michigan law that M.C.L. § 37.2102 provides the exclusive statutory cause of action for an age discrimination in employment claim, and that there is no separate cause of action for breach of Michigan public policy against age discrimination. Fair v. Prime Sec. Distributors, Inc., No. 96-1989, 1997 WL 810005, at **4 (6th Cir. Dec. 29, 1997). Ohio courts, however, are divided on whether a plaintiff may simultaneously pursue a statutory age discrimination claim under O.R.C. § 4112 and a common law claim for violation of Ohio public policy against age discrimination. See Gessner v. City of Union, 159 Ohio App. 3d 43, 48-49, 823 N.E. 2d 1, 4-5 (Ohio Ct. App. 2004).

The Ohio Supreme Court's decision in Wiles v. Medina Auto. Parts, 96 Ohio St. 3d 240, 773 N.E. 2d 526, 535 (Ohio 2002), is instructive here. In Wiles, the Court considered whether a terminated plaintiff could maintain both a claim under the Family Medical Leave Act and a claim for violation of Ohio public policy against wrongful discharge. Wiles, 96 Ohio St.3d at 249, 773 N.E. 2d at 535. In holding that such a public policy claim was not viable, the Court stated that "statutory remedies provide an effective vehicle for vindicating the statute's policy, obviating recognition of a wrongful discharge claim." Id. Several of this court's sister courts have since applied Wiles in holding that, because the Ohio Civil Rights Act ("OCRA") provides sufficient remedies, a plaintiff may not maintain a separate cause of action for breach of Ohio public policy against discrimination where the plaintiff has also brought a claim under the OCRA. See, e.g., Gray v. Allstate Ins. Co., No. 1:03-CV-910, 2005 WL 2372845, at *7-*8 (S.D. Ohio Sept. 26, 2005) (age discrimination case) (gathering cases); but see Mercurio v. Honeywell, No. C-1-02-275, 2003 WL 966287, at *3 (S.D. Ohio March 5, 2003) (public policy claim viable despite claim under OCRA).

16

This Court agrees. Under the FMLA, a plaintiff may recover compensatory damages, back pay, and front pay, and some equitable remedies such as reinstatement, as well as liquidated damages, but not punitive damages. A plaintiff bringing a claim under O.R.C. § 4112 is entitled to comprehensive remedies, including "'damages, injunctive relief, or any other appropriate relief.' The statute authorizes awards of back pay, front pay, and compensatory and punitive damages. It also permits a trial court to order reinstatement in lieu of front pay." See Gray, 2005 WL 2372845, at *8. This Court finds that the remedial scheme of O.R.C. § 4112 is substantially similar to that of the FMLA, and that Wiles thus applies to bar public policy claims based on age discrimination where the plaintiff has also brought a claim under O.R.C. § 4112. As such, Reynolds cannot maintain his breach of public policy claims under Ohio law, either. The Court therefore sua sponte **GRANTS** summary judgment to Georgia-Pacific on Counts III and V of Reynolds' complaint.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Georgia-Pacific Pacific's Motion for Summary Judgment (doc. #22) and also **GRANTS** summary judgment to Georgia-Pacific on Reynolds' Ohio and Michigan public policy claims.

IT IS SO ORDERED.

              s/Susan J. Dlott

              Susan J. Dlott
              United States District Judge